ACCEPTED
01-15-00041-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/17/2015 3:03:42 PM
CHRISTOPHER PRINE
CLERK

**NO. 01-15-00041-CR**

IN THE COURT OF APPEALS FOR THE
1ST JUDICIAL DISTRICT OF TEXAS
AT BEAUMONT

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/17/2015 3:03:42 PM
CHRISTOPHER A. PRINE
~~Clerk~~

**APOLINAR MARQUEZ CAMPOSANO,** *Appellant,*
**V.**
**THE STATE OF TEXAS,** *Appellee*

# APPELLANT'S BRIEF IN ACCORDANCE WITH ANDERS V. CALIFORNIA

Arising from:
Cause No. 08-05-04380-CR
In the 284th District Court,
Montgomery County, Texas

Michael "Corey" Young
Maginnis Pullan & Young, PLLC
Attorney for Apolinar Marquez
Camposano, Appellant

SBOT # 24042205
908 N. San Jacinto Street
Conroe, Texas  77301
(936) 647-1540
(936) 756-9896 (fax)

**ORAL ARGUMENT IS NOT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), the names of all parties to the judgment and the names and addresses of all trial and appellate counsel:

| | |
|---|---|
| Apolinar Marquez Camposano | Appellant |
| Brett Ligon<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 | District Attorney/Appellant |
| Patricia Maginnis<br>Erin Barry Reinstra<br>207 W. Phillips, Second Floor<br>Conroe, Texas  77301 | Prosecuting Attorneys in the trial court |
| Bill Delmore<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 | Prosecuting Attorney in appellate court |
| Tony Duckworth<br>902 N. San Jacinto St.<br>Conroe, Texas 77301 | Appellant's trial counsel |
| Michael "Corey" Young<br>908 N. San Jacinto Street<br>Conroe, Texas 77301 | Appellant's counsel |

# TABLE OF CONTENTS

Statement of the Case……………………………………………………PAGE 1

Summary……………………………………………………………..PAGE 1

Statement of Facts…………….……………………………………….PAGE 2

Issues Presented……………………………………………………….PAGE 6

   A. Anders Brief**………………………………………..………..**PAGE 6

   B. Possible Points of error, with related record citations and case law
……………………………………………..…………..…………PAGE 6

Conclusion and Prayer……………..…………………….……PAGE 14

# INDEX OF AUTHORITIES

**CASES**

*Anders v. California*, 386 U.S. 738 (1967) .......................................................................ii, 1, 6, 14
*Garcia v. State*, 429 S.W.3d 604, 609 (Tex. Crim. App. 2014) ........................................... 14
*Massaro v. United States*, 538 U.S. 500 (2003)................................................................. 11
*Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999)................................... 11

**STATUTES**

Tex. Code Crim. Proc. Ann. Art. 42.12(d) (Vernon Supp. 2008) ....................................12, 13
Tex. Code Crim. Proc. Ann. art. 42.12(e) (Vernon Supp. 2008)......................................... 13

**RULES**

Tex. R. Evid. 801(d)............................................................................................................. 9
Tex. R. Evid. 802 ................................................................................................................ 9

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant pled guilty to the charge of first-degree murder. Appellant pled open to the court for punishment, with a pre-agreed cap of 30 years of incarceration. After a hearing, the trial court sentenced Appellant to 30 years incarceration at the Texas Department of Criminal Justice – Institutional division. Appellant had the right to appeal his sentence, and appellate counsel was appointed to him. However, a notice of appeal was never filed. After Appellant wrote a letter to the court of conviction, new counsel was appointed. An application for Writ of Habeas Corpus was filed alleging ineffective assistance of counsel and requesting an out-of-time appeal. The writ was granted, as was the requested ground for relief. This appeal followed.

## SUMMARY

After a thorough review of the record, Appellate counsel is of the opinion that no viable points of error exist for purposes of a direct appeal. In accordance with *Anders v. California*, counsel has filed this brief, which summarizes the record and details all possible points of error. Counsel has provided relevant citations to case law and statutory authority as needed. A copy of this brief and

an explanatory letter will be sent to Appellant, as well as a copy of counsel's motion to withdraw from the case.

## STATEMENT OF FACTS

On November 10, 2008, Appellant pleaded guilty to the offense of murder [RR-2 5].

Michael James Landrum, a Detective for the Montgomery County Sheriff's Office, Major Crimes Unit, testified that on February 9, 2008, he was notified by the lieutenant of patrol investigation that a deceased female had been found inside a residence, and that a male had already been detained whom they believed responsible for the female's death [RR-3 10].

Det. Landrum drove to the scene and met with Appellant, who was handcuffed in the back of a patrol car [RR-3 11]. Appellant, "was very excited . . . [h]e readily spoke to me when I engaged him in conversation." *Id*. Det. Landrum also met with Appellant's two children and some neighbors at the scene. *Id*. Det. Landrum observed the victim, Elida Camposano, lying dead in the bathroom [RR-3 13, State's Ex. 1].

The two male children had already been interviewed at the scene and had told investigators that they had observed Appellant shoot their mother [RR-3 11-12]. According to Landrum, the two children had fled after the shooting to a neighbor's residence [RR-3 14]. The children remained at the neighbor's home while Landrum and the other officers processed the scene. *Id*.

2

Landrum testified further that he conversed with Appellant, that Appellant was cooperative, and that Appellant told Landrum the reason he killed Ms. Campozano was because "she had made him mad" [RR-3 14].

Landrum first interviewed Appellant at the scene for around 45 minutes, then conducted a second interview at the Montgomery County Jail [RR-3 17]. However, the audio component of the recorded jail interview malfunctioned, so the only audio of Appellant comes from the initial interviews in the patrol car at the scene [RR-317].

During the interview at the scene, Appellant was cooperative, expressed ideations regarding suicide, and stated "my life is over now" [RR-3 17-18]. Appellant made comments about suicide during both the on-scene and jail interviews [RR-3 19]. Appellant also stated that without his brother's intervention that morning he would have killed himself and that he loved his wife. *Id*. Appellant also stated to Landrum that he was sorry and that he loved his family [RR-3 19-20]. He also stated to Landrum that he had been drinking and that Ms. Camposano had been a good woman. *Id*.

Yolanda Cavozos, the sister of Elida Camposano, testified that she was aware that her sister's children had witnessed their mother get shot [RR-3 31]. She also intended to adopt the children. *Id*. Ms. Cavozos testified that since the day of the shooting, the older boy, "has a lot of anger; you can see that it's inside

3

of him" [RR-3 32]. The younger boy, "just cries all the time. He has – you can tell he has a lot of feelings inside of him that hurts him" [RR-3 33].

Ms. Cavozos also testified that the boys viewed Appellant as their father even though he is not their biological father [RR-3 33]. Both boys respect and love Appellant and never knew their biological fathers. *Id*. Before the murder, Appellant was a regular part of the boys' lives [RR-3 40-44]. While in jail, Appellant wrote letters to the boys, but they have not yet been opened [RR-3 42-44]. Appellant also intends to transfer property for the benefit of the boys [RR-3 45]. Appellant owns a residential property on Dallas Street in New Caney that he intends to transfer to the boys [RR-3 58].

Appellant grew up impoverished in San Luis Potosi, Mexico, and crossed the border into the United States at age 17 [RR-3 52-53]. Appellant had lived in either Harris or Montgomery County for approximately 16 years. *Id*. During this time, he would send money back to his family in Mexico, about every three weeks [RR-3 54]. Appellant has owned a tree service company for the last three years, and his brother works for him [RR-3 57]. When Appellant's father passed away, he paid for the funeral [RR-3 54].

Appellant and Elida's relationship was sometimes tempestuous – both had been arrested for assaults on the other, and Appellant successfully completed a probation for a family violence assault on Elida [RR-3 57-59]. Appellant also had successfully completed probation for possession of a controlled substance and

4

had some alcohol-related offenses, including two Driving While Intoxicated convictions [RR-3 60-62].

On the day of the murder, Appellant went to Humble, Texas, with his brother to play pool [RR-3 62-63]. Appellant had at least 12 beers while playing pool [RR-3 63]. Prior to that, it had been at least 6 months since Appellant had consumed any alcoholic beverages. *Id*.

Appellant and his brother got home around 3:00 in the morning, and his brother went to sleep [RR-3 64]. Appellant remembers undressing, brushing his teeth, and getting in bed [RR-3 65]. The next thing he remembers is arguing in the restroom with Elida. *Id*. He does not remember what they were arguing about, but recalls that she threatened to call the police [RR-3 66]. Appellant went and got his gun to scare her [RR-3 67]. Because of his status as an illegal immigrant, he was fearful of going to jail [RR-3 68]. He did not intend to kill Elida [RR-3 68]. He was not aware that the children were present [RR-3 68-69].

Appellant did not recall the statements he made to the 911 dispatch officer or that his brother removed the gun so that he would not shoot himself [RR-3 70].

After he fired the gun and shot Elida, Appellant got on his knees and held her [RR-370-71]. Appellant remembers at some point the children pleaded with him not to shoot Elida [RR-3 75, 76].

## ISSUE PRESENTED

Counsel files this brief in compliance with *Anders v. California* and hold that, after a thorough review of the record, no appellate issues exist for review by the court.

### A.    Anders brief.

After a thorough and conscientious examination of the record, counsel has come to the conclusion that the appeal is wholly frivolous and that there are no record-based points of error that can be raised based on direct appeal. Accordingly, counsel has filed this brief in compliance with *Anders v. California*, 386 U.S. 738 (1967). The holding in *Anders* requires that counsel request to withdraw from the case, and, with that request, file "a brief referring to anything in the record that might arguably support the appeal." *Id*. at 744. A copy of this brief must be forwarded to the Defendant, so that the Defendant may have time to file his own response brief, if desired. *Id*.

In compliance with *Anders*, the following review of all possible points of error is provided, along with relevant case law.

### B.    Possible points of error, with related record citations and case law.

The reporter's record reflects that Appellant was properly admonished of the punishment range for a first degree felony and that he was further admonished of his possible deportation upon his plea of guilty to the offense of

6

murder [CR 21, 22]. Appellant initialed by each statement and waiver in the plea paperwork, and indicated that he reads and understands both English and Spanish [CR 22-23]. Although the record reflects that Appellant used the services of a translator during the trial, it also reflects that during his own testimony he preferred to rely on his own comprehension of English to listen to and answer questions from both his attorney and the prosecutor [RR 47-49]. Nothing in the record suggests that Appellant had difficulties understanding the proceedings, and, in any event, no objections were made on that basis. The stipulation of evidence and other plea paperwork appears on its face to reflect a knowing and voluntary plea [CR 22-28].

Trial counsel filed a motion for new trial alleging that "[t]he verdict in this cause is contrary to the law and the evidence," but did not plead any specific facts or law supporting the granting of the motion [CR 40-41].

### 1. Photographs

Counsel did not object to the admission of photographs of the deceased, Ms. Camposano, or to a photograph of their children [RR 6-7]. The photographs were disturbing enough to cause the prosecutor to request that the family members remain outside of the courtroom while they were being published to the trial court [RR 8]. However, the photograph of the deceased (State's Exhibit 1), according to Detective Landrum, fairly and accurately depicted the condition of the body and location where investigating officers discovered it [RR 12-13]. The

State's sponsoring witness established a relevant purpose for their admission and counsel did not object to their admission. Therefore, any point of error raised regarding their admission would be frivolous. *See* Tex. R. Evid. 402, 403; Tex. R. App. Proc. 33.1.

### 2. Appellant's Initial Interview in the Patrol Car at the Scene of the Crime.

Detective Landrum testified that he began conversing with Appellant while Appellant was detained in another officer's patrol car [RR 14, 16]. No testimony was adduced as to whether Defendant was properly admonished of his Fifth and Sixth Amendment rights prior to Landrum conducting what in all likelihood was a custodial interrogation [RR 11 17]. However, the record reflects that Camposano "readily spoke" to Landrum when Landrum arrived, indicating a waiver of his rights [RR 11]. Defendant made statements to Landrum regarding his guilt, including admitting to shooting his wife because she made him angry [RR 12]. Throughout the interview, which lasted 45 minutes to an hour, Defendant remained detained in the backseat of a patrol car [RR 11, 16]. Landrum further testified that another interview was conducted inside the jail but that the audio failed to record during this interview [RR 17].

The facts necessary to determine whether the initial patrol car interview was technically "custodial," and whether the interviewing officers properly admonished Appellant of his rights, were not developed on the record. Further,

trial counsel did not object to Landrum's testimony regarding Appellant's admissions of guilt, either during the punishment hearing or in a pretrial motion to suppress. So, no viable suppression point of error can be raised on direct appeal. If Appellant chose, such an issue would be more appropriately raised as a ground for relief in a post-conviction writ of habeas corpus, either on the merits or, if the direct claim is waived because not previously raised, then through a ground for relief based on ineffective assistance of counsel.

### 3. Trial Counsel's failure to object to Improper Questioning by the State Prosecutor.

The following exchange occurred on the State's direct examination of Detective Landrum:

Prosecutor: "And is it a true statement that the two children observed the defendant shoot their mother?"

Det. Landrum: "That's the information they relayed to me, yes."

[RR 12]

This question was improper, both as to form (a leading question) and because it elicited improper hearsay evidence. See Tex. R. Evid. 801(d), 802. Appellant's trial counsel could have successfully objected to the question, but did not do so [RR 12]. Further, the State did not call any other fact witness who could have verified that the children did in fact observe their mother after she had been fatally shot.

9

Additionally, on redirect examination, the prosecutor improperly asked Detective Landrum the following leading question: "So isn't it true, Detective Landrum, in actuality the defendant told you that he loved her; 'She was too fucking mean to me, and I got tired'?" [RR 22].

The prosecutor also asked Detective Landrum to conclude that whoever fatally shot Ms. Camposano must have done so by pointing the gun directly at her head, based on the injuries that Detective Landrum observed when he arrived at the scene of the murder [RR 23]. The State did not attempt to lay any foundation that Detective Landrum was an expert qualified to offer testimony that would allow him conclude how the gun must have been oriented to cause the injuries he observed. *Id*. Trial counsel made no objection to the testimony.

Finally, the prosecutor asked the victim's sister, Yolanda Cavozos, about Ms. Camposano's children's therapy sessions with Theresa Burbank [RR 27, 34-35]. Some of this testimony relied upon hearsay statements from Ms. Burbank to Ms. Cavozos [See, e.g., RR 35]. The State had initially intended to call Ms. Burbank as a witness, but was unable to do so because the prosecutor had failed to subpoena her [RR 25-26]. Defense counsel suggested, "Yolanda is aware of the treatment [of the children]; if she wants to testify during treatment, I don't see any problem" [RR 26]. Defense counsel did not object to this testimony, so it's admissibility cannot be raised on direct appeal.

Counsel did not object to any of the State's improper questioning, and, therefore, the errors cannot be addressed on appeal. Since it is possible that counsel may have mistakenly failed to object, the issue of ineffective assistance of counsel may be considered as a possible point of error.

However, the record on direct appeal is almost always inadequate to support an ineffective assistance of trial counsel point of error. *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999) ("the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel."); *See also Massaro v. United States*, 538 U.S. 500 (2003) (in regards to ineffective assistance of counsel claims on direct appeal, "appellate counsel and the trial court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose").

Here, no record was developed to establish whether trial counsel provided deficient performance that prejudiced Appellant. All of counsel's decisions could be explained by trial strategy, e.g., by allowing the State to elicit some hearsay statements, it obviated the State's need to call further witness whose testimony would be more direct and damaging to the defense. In any event, without a *per se* act of ineffective assistance that prejudiced Appellant, raising an ineffective claim on direct appeal would not succeed. *Thompson*, 9 S.W.3d at 813-14.

**4. Introduction of the PSI report**

At the beginning of the trial, the prosecutor moved to admit the Presentence Investigation Report [RR 24]. Defense counsel objected to the PSI insofar as it represented that Defendant had been on probation in Bexar County and on community supervision for two misdemeanor charges. [RR 25]. According to defense counsel, Defendant had only been on probation once, and he never served a probation sentence in Bexar County. *Id*. Defense counsel also stated that such criminal history information is normally taken from a "TCIC/NCIC database." *Id*.

The Code of Criminal Procedure requires the trial court to make the presentence investigation report available to the defendant or his counsel for inspection and review at least 48 hours prior to the sentencing hearing. Tex. Code Crim. Proc. Ann. Art. 42.12(d) (Vernon Supp. 2008).

Defense counsel stated on the record that, referring to the PSI report, "I have seen this and reviewed it," but asked the court to allow Appellant to review it in court for any discrepancies [RR 24]. Although defense counsel then lodged an objection about an alleged discrepancy, the Court nevertheless allowed the PSI report to be admitted.

Appellant could argue that the trial court erred in relying on the PSI report in light of counsel's objection because it contained a misleading or false statement regarding a prior probated sentence. However, other than counsel's statements to the court, no affirmative evidence was admitted that countered the

criminal history compiled in the PSI report. The Code of Criminal Procedure allows counsel to "introduce testimony or other information alleging a factual inaccuracy in the investigation or report." Tex. Code Crim. Proc. Ann. art. 42.12(e). The statute does not provide that an entire PSI report may be excluded from consideration due to an alleged inaccuracy – it only provides a means for the defense to raise these inaccuracies. *Id*. Appellant's counsel did raise a potential inaccuracy, but did not introduce any refuting evidence on that point.

Further, Appellant could argue that the court had not complied with the statute since Appellant himself had not reviewed the PSI until the hearing date. However, counsel affirmatively represented to the court that he had previously reviewed the PSI, which amounts to technical compliance with the statute, since the PSI report must be made available to *either* the defendant or defense counsel. Tex. Code Crim. Proc. Ann. Art. 42.12(d). And, as stated above, if Appellant contends that counsel was deficient in not allowing him time to review the PSI report prior to the date of the hearing or for not introducing evidence that countered the report, that claim would be more effectively raised as an ineffective assistance of counsel ground for relief in an Article 11.07 Application of Writ of Habeas Corpus.

### 5. Appellant's waiver of his right to an interpreter

Finally, Appellant requested that he did not need an interpreter while he gave testimony under oath [RR 47]. There was no foundation laid regarding his

proficiency in English, and the interpreter had been used during the State's case [RR 47]. For a brief amount of time the interpreter continued to provide translations of the questions asked by defense counsel. *Id*. Then Appellant decided to proceed without the interpreter [RR 48-49]. The trial court instructed Defendant to stop the proceedings and let court or counsel know if he has any difficulty understanding [RR 49].

A defendant may knowingly and voluntarily waive his right to an interpreter. *Garcia v. State*, 429 S.W.3d 604, 609 (Tex. Crim. App. 2014). Here, the record reflects a knowing and voluntary waiver of by Appellant of an interpreter, and, therefore, no point of error is available for direct appeal. Id.

Appellate counsel discerns no other possible points of error.

## CONCLUSION AND PRAYER

Counsel for Appellant respectfully submits to the court this brief and prays that the court find that it meets those requirements specified in *Anders v. California*. Counsel for Appellant further prays that the Court grant his motion to withdraw and conduct an independent review of the record while affording Appellant time to respond to this Anders brief, if Appellant so desires.

Maginnis Pullan & Young
908 N. San Jacinto Street
Conroe, Texas 77301
(936) 647-1540
(936) 756-9896 (fax)

By:

/s/    Michael "Corey" Young

14

Michael "Corey" Young
SBOT # 24042205

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

I hereby certify that this document complies with the requirements of Tex. R. App. P. 9.4(i)(2)(B). There are 3,352 words in this document, excluding those portions that need not be counted under the rule, as calculated by the Microsoft Word for Mac software "word counter" tool.

/s/  Michael "Corey" Young
Michael "Corey" Young

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the State's appellate brief was faxed to Bill Delmore at the Montgomery County District Attorney's Office on December 23, 2014.

/s/  Michael "Corey" Young
Michael "Corey" Young